FILED

MAR 09 2010

DENNIS P. IAVARONE, CLERK
US DISTRICT COURT, EDNC
BY ___ DEP CLK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>YELLOWSTONE PARTNERS, INC. and DENNIS TODD HAGEMANN,<br>Defendants. | CASE NO. 5:10-CV-85-FL |

**COMPLAINT FOR INJUNCTIVE RELIEF, CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF**

Plaintiff U.S. Commodity Futures Trading Commission ("Commission" or "CFTC") alleges as follows:

## I. SUMMARY

1. From at least September 2009 through the present ("relevant period"), Defendants Yellowstone Partners, Inc. ("Yellowstone Partners") and Dennis Todd Hagemann ("Hagemann") (collectively, "Defendants") fraudulently solicited at least $700,000 from at least nine individuals, and attempted to solicit funds from at least one other individual, for the purpose of trading managed accounts and/or a pooled investment operated and managed by Defendants and

in connection with agreements, contracts or transactions in off-exchange foreign currency ("forex" or "foreign currency") that are margined or leveraged.

2. Hagemann lured prospective customers with the prospect of quickly making large profits, claiming on at least one occasion that he was making returns of 100% to 300% "every couple of months." Hagemann also falsely created the impression of being a well-established forex trader by: representing that he had $500 million dollars in investments under his control at all times when he did not, that he was registered with the National Futures Association ("NFA") when he was not, that he had employees who were registered with the NFA when he did not, that he had a trading system that was profitable even when the markets dropped, which was untrue, and falsely claiming a connection to deceased former Russian Federation President Boris Yeltsin.

3. Hagemann falsely claimed he was profitably trading forex for investors. He told a police officer that he made $20,000 for one of his customers. However, that customer stated that Hagemann did not tell him he made a profit or reimburse him for anything more than his initial investment.

4. Contrary to Hagemann's claims, only $200,000 of the approximately $700,000 that Defendants solicited from customers was ever deposited into actual forex trading accounts, and Defendants lost nearly all of that money by trading forex unsuccessfully. By November of 2009, Hagemann stopped trading the Yellowstone accounts. Instead, Hagemann misappropriated the remaining $500,000 in customer funds for personal use or to make purported profit payments or return principal to existing customers, in the manner akin to a "Ponzi" scheme.

5. Upon information and belief, Hagemann continues to solicit and accept investments claiming that he is trading forex.

6. Upon information and belief, Hagemann is concealing his trading losses, misappropriation, and on-going fraud from actual and prospective customers.

7. As a result of the conduct described above and the further conduct described herein, Defendants have engaged, are engaging, or are about to engage in acts and practices in violation of anti-fraud provisions of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1 et seq. (2006), as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008).

8. Hagemann, as an agent, employee or officer of Yellowstone Partners, committed the acts and omissions described herein within the course and scope of his employment, agency or office with Yellowstone Partners; therefore, Yellowstone Partners is liable under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Commission Regulation ("Regulation") 1.2, 17 C.F.R. § 1.2 (2009), for violations of the Act by Hagemann.

9. Hagemann is a controlling person of Yellowstone Partners. He failed to act in good faith or knowingly induced, directly or indirectly, the acts constituting the violations. Hagemann is therefore liable for Yellowstone Partners' violations of the Act pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2006).

10. Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), and Section 2(c)(2) of the Act as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2), the Commission brings this action to enjoin Defendants' unlawful acts and practices, and to compel

Defendants to comply with the Act. In addition, the Commission seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading and registration bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

11. Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

## II. JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1 (2006), and Section 2(c)(2)(C)(i)-(iii) of the Act as amended by the CRA, to be codified at 7 U.S.C. §2(c)(2)(C)(i)-(iii). Section 6c(a) authorizes the Commission to seek injunctive relief in district court against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of the Act or any rule, regulation, or order thereunder. In addition, this section authorizes the Commission to bring a civil action in district court to enforce compliance with the Act and any rule, regulation or order thereunder.

13. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2006), because Defendants are found, inhabit, reside and/or transact business in the Eastern District of North Carolina, and certain of the transactions, acts, practices, and courses of business alleged to have violated the Act occurred, are occurring, and/or are about to occur within this District.

## III. PARTIES

14. Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with the administration and enforcement of the Act, 7 U.S.C. §§ 1 *et seq.* (2006), as amended by the CRA, and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2009). The Commission maintains its principal office at Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

15. Defendant **Yellowstone Partners, Inc.** was incorporated in North Carolina and operates out of Raleigh, North Carolina. Yellowstone Partners (NFA ID 0406519) is listed as an "Exempt Commodity Pool Operator." The commodity pool listed with Yellowstone Partners, Inc. is titled "Yellowstone" (Pool ID P043007), and is claimed to be exempt from registration with the NFA under Regulation 4.13(a)(2), 17 C.F.R. § 4.13(a)(2) (2009).

16. Defendant **Dennis Todd Hagemann** resides in Raleigh, North Carolina. He purchased Yellowstone Partners from Robert Brumbaugh ("Brumbaugh") in November 2009. Hagemann is not registered with the NFA as a CPO or in any other capacity.

## IV. FACTS

**Fraudulent Solicitation**

17. Brumbaugh opened accounts in Yellowstone Partners' name at two futures commission merchants ("FCMs") on February 3, 2009 and February 9, 2009. The FCMs were Forex Capital Markets ("FXCM") and Global Forex Trading ("GFT"). Yellowstone Partners used these accounts to trade forex for retail customers. Brumbaugh and Hagemann owned Yellowstone Partners, with Hagemann owning 60% of the company. In or about November

2009, Brumbaugh sold his portion of the Yellowstone operation to Hagemann who continued to solicit and receive customer funds.

18. From inception to present, Yellowstone solicited and received approximately $1.3 million from retail forex customers. During the relevant period, Defendants fraudulently solicited, directly and through others, at least $700,000 from at least nine individuals for the purported purpose of trading managed accounts and/or a pooled investment operated and managed by Defendants and in connection with agreements, contracts or transactions in off-exchange forex that are margined or leveraged.

19. In his oral solicitations, Hagemann, directly and through others, represented that he would trade foreign currency on behalf of customers.

20. Hagemann solicited customers through personal solicitations and possibly through other means. In at least two instances, Hagemann solicited $50,000 through meetings at restaurants.

21. In his oral solicitations, Hagemann falsely claimed experience and success in trading foreign currency and lured prospective customers with false promises that they could quickly make large profits. He stated that Yellowstone Partners was returning 100% to 300% profits to customers every couple of months. He failed to disclose that these claims were false.

22. As recently as the fall or winter of 2009, Hagemann falsely claimed to have Russian contacts that could help his investments. This included an unnamed individual who allegedly has connections to former Russian Federation President Boris Yeltsin. Hagemann failed to inform the potential investor that Mr. Yeltsin is deceased, and was deceased at the time he made the representation.

Case 5:10-cv-00085-FL Document 1 Filed 03/09/10 Page 6 of 15

23. On information and belief, during the relevant period Hagemann falsely claimed that he was investing investors' money in forex when he was misappropriating at least a portion of the investments.

24. On at least one occasion during the relevant period, Hagemann falsely claimed to have people working for him and/or Yellowstone Partners who were registered with the CFTC and/or NFA.

25. On at least two occasions during the relevant period, Hagemann failed to disclose to his investors that he has been charged with a felony in connection with passing a worthless check for $70,000.

26. On at least one occasion during the relevant period, Hagemann falsely claimed that he had $500 million dollars under his control.

27. On at least one occasion during the relevant period, Hagemann claimed that he could not return the investors money when requested, because it would be illegal for him to do so.

28. On information and belief, Hagemann failed to disclose to customers and prospective customers that he was operating a Ponzi scheme and misappropriating customer funds.

29. During the relevant period, Hagemann instructed at least one customer to send funds directly to him via check so that he could deposit the money in Yellowstone faster.

30. On information and belief, at least certain of Defendants' customers, if not all, were individuals who each had total assets of less than $5 million.

31. On information and belief, Yellowstone Partners and Yellowstone are entities that each has total assets of less than $10 million.

32. On information and belief, customers and prospective customers relied on Hagemann's misrepresentations and omissions in making their decisions to invest and reinvest with Defendants.

**Misappropriation**

33. On September 2, 2009, Hagemann received a $50,000 check from one investor to trade forex. As instructed by Hagemann in order to speed the deposit of the check into Yellowstone Partners, the investor made the check out to Hagemann personally. Hagemann deposited the check in his personal account at the North Carolina State Employees' Credit Union (NCSECU).

34. On September 3, 2009, the investor who invested $50,000 with Hagemann on September 2, 2009, asked for his money to be returned. Hagemann told him he could not remove the money from the investment or write him a check, because that would constitute money laundering. Instead, Hagemann told the investor that he would speak to the "trading house" to determine when the investor's money would be available, and would get back to him by September 8, 2009. On September 17, 2009, the $50,000 was part of a $200,000 deposit into the Yellowstone Partners' account at First Citizens Bank. The investor consistently asked for the return of his money. The investor's money was not returned until October 22, 2009.

35. As of the end of October 2009, Yellowstone Partners no longer traded its accounts at FXCM and GFT. Nonetheless, upon information and belief, Hagemann continued to solicit and accept investments in Yellowstone Partners to trade forex.

36. Sometime during December of 2009, Hagemann met with a potential investor to solicit funds. As part of the conversation, he told her that he had $500 million under his control but that he needed her investments to have funds available in case one of the other investors asked for the return of his funds. Thus, he implied to this witness that it was his intention to use the investor's funds to pay other investors who sought the return of their principle or profit. In fact, he did not have $500 million under his control.

37. Instead of trading investor funds as promised, Hagemann used the funds to repay principal and pay purported profitable returns to existing investors in a manner typical of a Ponzi scheme. Additionally, upon information and belief, he used investor funds to pay personal expenses. Upon information and belief, these expenses include expensive clothing and an Aston Martin sports car purchased in cash.

38. Hagemann knew that his solicitations were untrue because he controlled the trading accounts during the relevant period and therefore knew that his forex trading was unsuccessful, that he was not trading for a period of time, that he did not actually have $500 million under his control. Hagemann also knew or recklessly disregarded the fact that he was not registered with the NFA and did not have employees so registered. Hagemann knew that he was misappropriating the funds because he used customer funds for purposes other than trading.

## V. COUNT ONE:
## Violations of the Commodity Exchange

**Violations of Sections 4b(a)(2)(A)-(C) of the Act,**
**as amended by the CRA**
**(Fraudulent Solicitation and Misappropriation)**

39. The allegations set forth in paragraphs 1 through 38 are realleged and incorporated herein by reference.

40. Sections 4b(a)(2)(A)-(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A)-(C), make it unlawful

> for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or other agreement, contract, or transaction subject to paragraphs (1) and (2) of section 5a(g), that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market – (A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; [or] (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contact for or, in the case of paragraph (2), with the other person.

Sections 4b(a)(2)(A)-(C) of the Act, as amended by the CRA, apply to the foreign currency transactions, agreements or contracts offered by Defendants. Section 2(c)(2)(C)(iv) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(iv).

41. On information and belief, as set forth above, from at least September 2009 through the present, in or in connection with foreign currency contracts, made, or to be made, for or on behalf of, or with, other persons, Hagemann cheated or defrauded or attempted to cheat or defraud customers or prospective customers; willfully deceived or attempted to deceive customers or prospective customers by, among other things, knowingly (i) fraudulently soliciting customers and prospective customers; (ii) misappropriating customer funds that purportedly were to be used to trade forex; (iii) misrepresenting forex trading activity that purportedly occurred on behalf of Yellowstone Partners' customers; (iv) and failing to disclose that Defendants were operating a Ponzi scheme and misappropriating customer funds, all in violation of Sections

4b(a)(2)(A)-(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A)-(C).

42. Yellowstone Partners, by and through its agents and Hagemann engaged in the acts and practices described above knowingly or with reckless disregard for the truth.

43. Hagemann controlled Yellowstone Partners, directly or indirectly, and did not act in good faith or knowingly induced, directly or indirectly, Yellowstone Partners' conduct alleged in this Complaint; therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2006), Hagemann is liable for Yellowstone Partners' violations of Sections 4b(a)(2)(A)-(C) of the Act, as amended by the CRA, to be codifed at 7 U.S.C. §§ 6b(a)(2)(A)-(C).

44. The foregoing acts, misrepresentations, omissions, and failures of Hagemann's occurred within the scope of his employment, office or agency with Yellowstone Partners; therefore, Yellowstone Partners is liable for these acts, misrepresentations, omissions, and failures pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Regulation 1.2, 17 C.F.R. § 1.2 (2009).

45. Each act of misappropriation, misrepresentation or omission of material facts, and making or causing to be made a false report or statement, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Sections 4b(a)(2)(A)-(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A)-(C).

## VI. RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), and pursuant to its own equitable powers, enter:

a) An order finding that Defendants violated Sections 4b(a)(2)(A)-(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A)-(C);

b) An order of permanent injunction prohibiting Defendants and any of their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with any defendant, including any successor thereof, from engaging, directly or indirectly:

(i) in conduct in violation of Sections 4b(a)(2)(A)-(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A)-(C); and

(ii) trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29) (2006));

(iii) entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (2009)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts") for their own personal account or for any account in which they have a direct or indirect interest;

(iv) having any commodity futures, options on commodity futures, commodity options, and/or forex contracts traded on their behalf;

(v) controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, and/or forex contracts;

(vi) soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

(vii) applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2009);

(viii) acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2009)), agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2009);

c) An order directing Defendants, as well as any successors to any Defendant, to disgorge, pursuant to such procedure as the Court may order, all benefits received from the acts or practices which constitute violations of the Act, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

d) An order directing Defendants to make full restitution to every person or entity whose funds Defendants received or caused another person or entity to receive as a result of acts and practices that constituted violations of the Act, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

e) An order directing Defendants and any successors thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or

Case 5:10-cv-00085-FL Document 1 Filed 03/09/10 Page 13 of 15

express, entered into between them and any of the customers whose funds were received by them as a result of the acts and practices which constituted violations of the Act, as described herein;

f) An order directing each Defendant to pay a civil monetary penalty for each violation of the Act described herein, plus post-judgment interest, in the amount of the higher of: $140,000 for each violation of the Act committed on or after October 23, 2008, $130,000 for each violation of the Act committed on or between October 23, 2004; or triple the monetary gain to each defendant for each violation of the Act described herein, plus post-judgment interest;

g) An order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2006); and

h) Such other and further relief as the Court deems proper.

Dated: March 9th, 2010.

Respectfully submitted by,

Jason A. Mahoney
Trial Attorney
jmahoney@cftc.gov
D.C. Bar No. 489276

John Dunfee
Chief Trial Attorney
jdunfee@cftc.gov
D.C. Bar No. 461549

Paul Hayeck
Associate Director
phayeck@cftc.gov
Massachusetts Bar No. 554815

Attorneys for Plaintiff



U.S. Commodity Futures Trading Commission
Division of Enforcement
Three Lafayette Centre
1151 21st Street NW
Washington, DC 20581
(202) 418-5000