IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CV-85-FL

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>YELLOWSTONE PARTNERS, INC. and DENNIS TODD HAGEMANN,<br><br>Defendants. | ) | ORDER FOR ENTRY OF DEFAULT JUDGMENT, PERMANENT INJUNCTION, CIVIL MONETARY PENALTY, AND ANCILLARY EQUITABLE RELIEF |

This matter comes before the court on plaintiff's motion for entry of default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. Plaintiff has established a right to default judgment based on the affidavits and other documentary evidence presented in support of its motion. For the reasons set forth below, plaintiff's motion is granted.

**FINDINGS OF FACT**

**A. Parties and Jurisdiction**

1. This court has jurisdiction over this action pursuant to Section 6c(a) of the Commodity Exchange Act ("the Act"), 7 U.S.C. § 13a-1 (2006), and Section 2(c)(2)(C)(i)-(iii) of the Act as amended by the CFTC Reauthorization Act of 2008 ("the CRA"). Venue is proper in this district pursuant to 7 U.S.C. § 13a-1(e).

2. Plaintiff U.S. Commodity Futures Trading Commission ("the Commission") is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act.

3. Defendant Yellowstone Partners, Inc. ("Yellowstone Partners") is incorporated in North Carolina and operates out of Raleigh, North Carolina. Defendant Todd Hagemann ("Hagemann") resides in Raleigh, North Carolina and is the agent and owner of Yellowstone Partners.

4. Despite being properly served, Hagemann and Yellowstone Partners have failed to plead or otherwise defend this action as required by law. Further, Yellowstone Partners has failed to obtain counsel in violation of this court's order of March 19, 2010. Default was entered by the Clerk of Court on May 12, 2010.

**B. Defendants' Fraudulent Conduct**

5. Hagemann purchased Yellowstone Partners from Robert Brumbaugh ("Brumbaugh") in November 2009. Prior to Hagemann's purchase, Brumbaugh opened accounts in Yellowstone Partners' name at two futures commission merchants – Global Forex Trading ("GFT") and Forex Capital Markets ("FXCM") – on or about December 19, 2008 and February 13, 2009. Yellowstone Partners used these accounts to trade off-exchange foreign currency ("forex") for retail customers in a commodity pool. From at least September 2009 through March 9, 2010, Yellowstone Partners solicited and received $1,505,000.00 from pool participants.

6. Beginning in or about September 2009, defendants fraudulently solicited, directly and through others, at least 25 individuals for the purported purpose of trading managed accounts and/or a pooled investment operated and managed by defendants and in connection with agreements, contracts or transactions in off-exchange forex that are margined or leveraged. In oral solicitations, Hagemann, directly and through

others, represented that he would trade forex on behalf of pool participants ("participants").

7. Hagemann solicited participants through personal solicitations. In at least two instances, he solicited $50,000.00 through lunch meetings. In his oral solicitations, he falsely claimed experience and success in trading forex and lured prospective participants with false promises that they could quickly make large profits. He stated that Yellowstone Partners was returning 100% to 300% profits to participants every couple of months. He failed to disclose that these claims were false.

8. In addition, Hagemann claimed to have Russian contacts that could help his investments, including an unnamed individual who allegedly has connections to former Russian Federation President Boris Yeltsin. Hagemann failed to inform the potential participant that Mr. Yeltsin is deceased and was deceased at the time he made the presentation.

9. On at least one occasion, Hagemann falsely claimed to have people working for him and/or Yellowstone Partners who were registered with the Commission and/or the National Futures Association ("NFA").

10. On at least one occasion, Hagemann failed to disclose to participants that he had been charged with a felony in connection with passing a worthless check for $70,000.00.

11. On at least one occasion, Hagemann falsely claimed that he had $500 million dollars under his control.

12. On at least one occasion, Hagemann claimed that he could not return a participant's money when requested because it would be illegal for him to do so.

13. Hagemann failed to disclose the fact that he was running a Ponzi scheme and misappropriating funds to participants and prospective participants.

14. Hagemann instructed at least one participant to send funds directly to him via check so that he could deposit the money in Yellowstone Partners more quickly.

15. At least some of the participants were individuals who each had total assets of less than $5 million.

**C. Defendants' Misappropriation of Participant Funds**

16. On September 2, 2009, Hagemann received a $50,000.00 check from one participant to trade forex. As instructed by Hagemann in order to speed the deposit of the check into Yellowstone Partners, the participant made the check out to Hagemann personally. Hagemann deposited the check in his personal account at the North Carolina State Employees' Credit Union.

17. On September 3, 2009, the participant who invested $50,000.00 with Hagemann on September 2, 2009, asked for his money to be returned. Hagemann told the participant that he could not remove the money from the investment or write him a check, because that would constitute money laundering. Instead, Hagemann told the participant that he would speak to the "trading house" to determine when the participants' money would be available, and would get back to him by September 8, 2009. The participant consistently asked for the return of his money. The participants' money was not returned until October 22, 2009.

18. As of the end of October 2009, Yellowstone Partners no longer traded its accounts at FXCM and GFT. Nonetheless, Hagemann continued to solicit and accept investments in Yellowstone Partners to trade forex. Ultimately, Hagemann solicited

over $1.5 million dollars from pool participants to be traded through the pool, but only invested approximately $200,000.00 of the $1.5 million. Hagemann misappropriated the remaining $1.3 million.

19. During December 2009, Hagemann met with a potential participant to solicit funds. As part of the conversation, he told her that he had $500 million under his control but that he needed her investments to have funds available in case one of the other participants asked for the return of his or her funds. In other words, he told the potential participant that it was his intention to use her funds to pay other participants who sought the return of their principle or profit. Rather than trade participants' funds as promised, Hagemann used the funds to repay principal and pay purported profitable returns to existing pool participants.

**D. Violation of Section 4b(a)(2)(A)-(C) of the Act**

20. Based on the foregoing facts, defendants defrauded prospective and existing commodity pool participants in violation of Sections 4b(a)(2)(A)-(C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(2)(A)-(C).

21. The total amount of loss caused by defendants' fraudulent conduct was $827,779.00, calculated by taking the amount solicited by defendants and subtracting amounts returned to participants and amounts due to trading losses.

22. Hagemann is liable as a controlling person for Yellowstone Partners' violations of the Act pursuant to Section 13(b) of the Act. At all times relevant to this action, Hagemann was acting as an agent in the scope of his employment with Yellowstone Partners, which is accordingly liable under Section 2(a)(1)(B) of the Act for Hagemann's conduct.

23. Based on defendants' conduct, it is reasonably likely that further violations of the Act will occur if the court does not order injunctive relief.

## REMEDIES

### A. Permanent Injunction

Pursuant to 7 U.S.C. § 13a-1, the court may permanently enjoin acts or practices which violate the Act. Accordingly, the court hereby ORDERS that defendants and any of their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with either defendant, including any successor thereof, are PERMANENTLY ENJOINED from:

1. engaging, directly or indirectly in conduct in violation of Section 4b(a) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a), or Section 4o(1) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 6o;
2. engaging, directly or indirectly in trading on or subject to the rules of any registered entity, as that term is defined in Section la(29) of the Act, 7 U.S.C. § la(29);
3. entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 32.1(b)(1), 17 C.F.R. § 32.l(b)(1)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act as amended, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts") for their own personal account or for any account in which they have a direct or indirect interest;
4. having any commodity futures, options on commodity futures, commodity options, and/or forex contracts traded on their behalf;
5. controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity

futures, options on commodity futures, commodity options, and/or forex contracts;

6. soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

7. applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4. 14(a)(9); and

8. acting as a principal (as that term is defined in Regulation 3 .1 (a), 17 C.F.R. § 3.1(a) (2009)), agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4. 14(a)(9).

**B. Restitution and Other Ancillary Equitable Relief**

Pursuant to 7 U.S.C. § 13a-1, this court has the authority to grant ancillary equitable relief that it deems appropriate for violations of the Act, including restitution and disgorgement of ill-gotten gains. Accordingly, defendants are hereby ORDERED to make full restitution to every person or entity whose funds Defendants received or caused another person or entity to receive as a result of acts and practices that constituted violations of the Act, as described herein, in the amount of $827,779.00. Defendants shall be jointly and severally for this obligation, and interest shall accrue as of the date of judgment in the amount set forth by 28 U.S.C. § 1961.

Defendants are further ORDERED to rescind any and all contracts and agreements, whether implied or express, entered into between them and any of the participants whose funds were received by them as a result of the acts and practices which constituted violations of the Act.

## C. Monetary Penalty

In addition to restitution, the court may impose a civil monetary penalty against any person found to have violated the Act, pursuant to 7 U.S.C. § 13a-1(d)(1). The maximum civil penalty permitted under the Act is the greater of $100,000.00 or triple the monetary gain to the person for each violation. Because defendants defrauded individuals of $827,779.00, this amount will be considered the amount of monetary gain, and a penalty not in excess of $2,483,337.00 is authorized by the Act. However, based on the gravity of the offense, the court will impose a penalty of $827,779.00. Defendants are jointly and severally liable for this sum, and interest shall accrue as of the date of judgment in the amount set forth by 28 U.S.C. § 1961.

## D. Costs and Fees

The court notes that the Commission has requested costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2). That request is ALLOWED. The Commission is directed to separately move for such costs and fees within fourteen (14) days of entry of judgment, with supporting materials as necessary. See Fed. R. Civ. P. 54(d).

SO ORDERED, this the 1st day of March, 2011.

LOUISE W. FLANAGAN
Chief United States District Judge