IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CV-85-FL

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, ) ) ) Plaintiff, ) ) v. ) ) YELLOWSTONE PARTNERS, INC. ) and DENNIS TODD HAGEMANN, ) ) Defendants. ) | ORDER |

This matter comes before the court on the first interim report (DE # 46) and first interim application for fees (DE # 47) filed by the receiver of defendants' assets, L. Bruce McDaniel. The court finds the receiver's report to be satisfactory, and will allow in part his application for fees, as modified for the reasons set forth below.

## BACKGROUND

On March 9, 2010, plaintiff filed complaint with this court seeking to restrain defendants from violating the Commodity Exchange Act ("the Act"), 7 U.S.C. § 1 et seq., as amended. On March 10, 2010, the court ordered statutory preliminary injunctive relief to prohibit dissipation of assets. After defendants failed to appear, the court entered default judgment, permanently enjoining defendants from further violating the Act and awarding a substantial civil monetary penalty as well as ancillary equitable relief.

On March 31, 2011, upon motion of plaintiff, the court appointed Mr. McDaniel as temporary receiver of defendants' assets. Among other things, the court directed the receiver to

assume full control of defendants' business affairs, to take possession of the funds and other asserts in defendants' control, to collect money owed to defendants, and to engage the services of any professional or specialist deemed advisable or necessary to perform his duties. The court also directed the receiver to file, within forty-five (45) days of his appointment, a report describing

> the steps taken to identify customers, marshal assets, determine the amount invested by each customer, and the portion of assets available to pay back customers. This report and plan shall also include a statement as to the estimated time it will take to distribute available assets to customers and wind up the receivership, identify persons determined necessary to associate in furtherance of the discharge of the receiver's duties, and provide a breakdown of the estimated fees and expenses.

Order [DE # 45] at 7. The court stated that, upon review of the receiver's report, order would issue approving or disapproving the plan.

The court also stated that it would allow "reasonable compensation to the receiver and all personnel hired by the receiver . . ., not to exceed five percent (5%) upon receipts and disbursements, [as well as] the costs and expenses of administration of his trust and of the proceedings in this court . . . ." Id. at 7-8. Knowing that the receiver was also an attorney, the court stated that it would

> allow counsel fees to any attorney serving as receiver, in addition to the commissions allowed him as receiver, to the extent he renders professional services, as an attorney, which are beyond the ordinary routine of a receivership and of a type which would reasonably justify the retention of legal counsel by any such receiver not himself licensed to practice law. . . . If the receiver acts also as counsel for the receivership, fees incurred as counsel must be separately calculated from fees incurred as receiver. Costs and expenses also shall be separately itemized.

Id. at 8. The court directed the receiver to file his first request for compensation within forty-five (45) days of appointment, and thereafter at intervals not to exceed thirty (30) days.

2

**DISCUSSION**

A.      Receivership Report and Plan

The receiver reports that he has started to close out defendants' trading accounts and bank accounts, hoping that they will return a net value of up to $170,000.00. He has also identified three lots of real estate of unknown value in or near Chocowinity, North Carolina, as well as a rental property of unknown value in Baltimore, Maryland. The receiver also is pursuing the sale of one motor vehicle (a 2005 Aston Martin, reportedly in poor condition) and one small boat of indeterminate origin and value. Finally, the receiver states that he is attempting to recover $15,000.00 for a radio advertising deposit. All told, it appears that the receiver's rough estimate of the total value of these assets at this time is approximately $230,000.00.

The receiver also has requested documentation regarding investments made by potential claimants in connection with defendants' commodities fraud under the Act. According to the receiver's records, the aggregate amount of the estimated claims is approximately $1,505,000.00. Following sale and collection of all assets, the receiver proposes to send defrauded investors a form notice of right to file proofs of claim, with standard proofs of claim, deadlines, and similar information. The receiver is unaware of any other debts at this time, anticipating only the expenses of administering the receivership estate and possible tax liabilities.

With respect to those expenses, the receiver estimates allocating approximately $6,000.00 to $10,000.00 for storage costs and $35,000.00 to $50,000.00 for professional fees for the receiver/attorney and a retained accountant. The receiver estimates that it could take three to six months to liquidate defendants' real estate and personal property, and that the receivership estate could be closed within three to four months thereafter.

The receiver's progress thus far is satisfactory. He is directed to continue to work toward obtaining a more concrete valuation of the receivership assets and providing a more detailed timetable for the court's consideration. To that end, he is directed to file a supplemental receivership report and plan within thirty (30) days of date of entry of this order.

B.  First Application for Fees

The receiver seeks receivership fees in the amount of $10,668.50. These fees represent 34.07 hours of work at the receiver's usual rate (for attorney services) of $300.00 per hour, as well as 8.95 hours of work by a paralegal at a rate of $50.00 per hour. The receiver suggests that these fees are reasonable under the factors set forth by Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir. 1978). The receiver also seeks expenses and costs in the amount of $254.60 for printing, photocopying, and car mileage (at $0.55 per mile).

Contrary to the court's appointment order, the receiver did not separately calculate fees incurred as counsel – that is, fees for professional legal services "which are beyond the ordinary routine of a receivership and of a type which would reasonably justify the retention of legal counsel by any such receiver not himself licensed to practice law" – from those incurred as receiver. Instead, the receiver seeks to recover his legal fee of $300.00 per hour for all services rendered. The receiver also appears to have lost sight of the court's statement that his compensation was "not to exceed five percent (5%) upon receipts and disbursements." Cf. N.C. Gen. Stat. § 1-507.9. The receiver's request for $10,668.50 in fees for the first forty-five (45) days of work already accounts for more than 4.5% of the $230,000.00 total estimated value of the receivership assets.

Rather than require the receiver to resubmit his application with the appropriate allocation between receivership fees and attorney's fees, the court has used the receiver's detailed itemization

4

of services rendered to separate legal services from receiver services. Items such as "organization of files," "telephone calls closing outstanding bank accounts," and "email[s] concerning proposed offer to buy receivership car" were designated as fees incurred as receiver. Items such as "review of appointment court order," "research," and "telephone calls with federal clerk regarding judge's preferences" were designated as attorneys' fees.[1] Based on the court's calculation, the receiver rendered 24.0 hours of services as receiver and 10.0 hours as counsel.

In future fee applications, the receiver shall separately allocate these fees himself, and shall do so to the nearest tenth of an hour rather than the nearest hundredth of an hour. The court will compensate receivership activities performed by the receiver for which compensation now is sought (*e.g.*, opening and closing bank accounts, identifying and selling assets) at $150.00 per hour. Services rendered by the receiver as an attorney (*e.g.*, legal research, preparation and filing of materials before this court) will be compensated at $300.00 per hour, subject to the court's review of the Barber factors. The receiver's paralegal will be compensated at a rate of $50.00 per hour. Car mileage will be allowed as a cost at the federal rate of $0.51 per mile. Printing and photocopying will be allowed as a cost at a rate of $0.05 per page.

Applying these rates to the receiver's itemization results in a request for $5,100.00 in receivership fees, $3,000.00 in attorneys' fees, and $445.00 in paralegal's fees.[2] The court has considered the twelve Barber factors, see 577 F.2d at 226 n.28, and concludes that the separately

---

[1] Certain items in the receiver's report group together services rendered as receiver and those rendered as counsel. In such instances, the court either split the difference or attributed all of the hours to the more prominent activity. The court does not anticipate this problem arising again in future fee applications, where the receiver will now separately itemize fees incurred as receiver from those incurred as counsel.

[2] In accordance with the compensation of the receiver and those employed by him in increments of one-tenth of an hour, the court calculated the paralegal's request as 8.9 hours rather than 8.95.

5

calculated attorneys' fees are reasonable given the time and labor required, the legal complexity of the matter, and the customary hourly rate for such services, among other pertinent factors. Accordingly, the court ALLOWS a total of $8,545.00 in professional fees. The costs requested include $7.14 for fourteen (14) miles driven and $242.15 for photocopies. These costs, which total $249.29, also are ALLOWED.

Even as discounted from the receiver's initial request, the $8,545.00 in professional fees allowed for services thus far rendered already exceeds 3.5% of the estimated total receipts and disbursement. It therefore appears likely that the five percent (5%) cap will soon be met. If the receiver would request that the court increase the current cap – for example, to ten percent (10%) upon receipts and disbursements – he shall do so in his next fee application. The receiver also is encouraged to consider more particularly how he may reduce further his receivership fees, by involving other persons to discharge discrete functions who may be compensated at more reduced rates for receivership activities, many of which seem susceptible to performance, for example, by a paralegal, real estate broker, or other professional.

## CONCLUSION

For the reasons set forth above, the court DIRECTS the receiver to file a second interim receivership report and plan within thirty (30) days of date of entry of this order. The receiver's first application for fees (DE # 47) is ALLOWED IN PART. The receiver is allowed professional fees in the amount of $8,545.00 and costs in the amount of $249.29.

SO ORDERED, this the 16th day of June, 2011.

_____
LOUISE W. FLANAGAN
Chief United States District Judge