IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CV-85-FL

| U.S. COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) ) | ORDER |
| v. | ) ) | |
| YELLOWSTONE PARTNERS, INC. and DENNIS TODD HAGEMANN, | ) ) ) | |
| Defendants. | ) | |

This matter comes before the court on the second interim report (DE # 55), second interim application for fees (DE # 54), and third interim application for fees (DE # 56) filed by the receiver of defendants' assets, L. Bruce McDaniel. The court finds the receiver's second interim report to be satisfactory, and will allow in part his applications for fees, as modified.

## BACKGROUND

On March 9, 2010, plaintiff filed complaint with this court seeking to restrain defendants from violating the Commodity Exchange Act ("the Act"), 7 U.S.C. § 1 et seq., as amended. On March 10, 2010, the court ordered statutory preliminary injunctive relief to prohibit dissipation of assets. After defendants failed to appear, the court entered default judgment, permanently enjoining defendants from further violating the Act and awarding a substantial civil monetary penalty as well as ancillary equitable relief.

On March 31, 2011, upon motion of plaintiff, the court appointed Mr. McDaniel as temporary receiver of defendants' assets. Among other things, the court directed the receiver to

assume full control of defendants' business affairs, to take possession of the funds and other asserts in defendants' control, to collect money owed to defendants, and to engage the services of any professional or specialist deemed advisable or necessary to perform his duties.

The receiver filed his first interim report on May 13, 2011, detailing steps taken to fulfill his obligations as receiver. By order entered June 16, 2011, as amended by later order entered June 20, 2011, the court allowed the receiver's first application for professional fees in the amount of $7,045.00, and costs in the amount of $249.29. The court noted that, in light of the limited assets of the receivership estate, the cap on fees of 5% of total receipts and disbursements would soon be met. As such, the receiver was directed to move to increase the cap if necessary.

## DISCUSSION

A.   Second Interim Receivership Report and Plan

The receiver's second interim report indicates that he has been diligent in carrying out the plan identified in his prior report. Specifically, the receiver has closed out defendants' trading accountings, resulting in a collection of $302.70, and multiple bank accounts, netting approximately $175,800.00. He has also recovered a $15,000.00 radio advertising deposit and a new check in the amount of $10,000.00 to pay a receivable previously paid by a questionable check. He has also entered into a contract to sell receivership real estate (a residential townhouse) in Baltimore, Maryland, which he believes will net $50,000.00 after closing costs and repairs.[1]

Receivership real estate in Eastern North Carolina remains difficult to value. The receiver indicates that he has hired a local attorney to determine not only the exact tracts of realty involved, but also who owns them and with what encumbrances. The receiver reports incomplete paperwork

---

[1] By order entered July 20, 2011, the court allowed the receiver's motion to sell this property.

2

and multiple owners, and is pursuing a settlement to avoid further delays and costs. He warns that barring a settlement, litigation could be quite costly in terms of legal fees.

The receiver continues to pursue the sale of a 2005 Aston Martin in his possession, which is in poor condition and requires $15,000 to $25,000 in repairs. The receiver indicates that the esoteric nature of the vehicle and its poor condition have made it difficult to find a buyer. Additionally, the receiver reports a dispute with the bailee company due to claimed storage fees and repair charges. The other unique properties identified by the receiver in his previous report – a small boat and trailer – have been abandoned to their bailee for unpaid storage charges.

All told, the receivership currently has approximately $192,000.00 on hand, with an additional $70,000.00 to $80,000.00 anticipated from the sale of the Maryland real estate and Aston Martin. (The value of the North Carolina real estate is impossible to estimate at this point.) The receiver has received no new documentation regarding anticipated claims on the receivership estate by defrauded investors. That figure stands at approximately $1,505,000.00. The receiver estimates total receivership fees will run between $28,000.00 and $35,000.00, with additional accounting fees ranging from $12,000.00 to $15,000.00.

The receiver's progress thus far is satisfactory, but once again the court is concerned that the receivership and accounting fees estimated by the receiver will outpace the cap on such fees imposed by the court, and will significantly reduce the amount available to the victims of defendants' fraud. The receiver is directed to continue to consider how he may reduce further the receivership fees in this case, for example by involving other persons (*e.g.*, paralegals, real estate brokers) who may be compensated at reduced rates. The receiver is also directed to continue to work toward selling the Aston Martin and obtaining a valuation and/or settlement regarding the real estate in Eastern North

3

Carolina. As before, the receiver is directed to file a supplemental receivership report and plan within thirty (30) days of date of entry of this order.

B.   Second and Third Interim Applications for Fees

In his second interim application, the receiver requests $6,325.00 in professional fees and $198.61 for expenses. In his third application, he requests $5,285.00 in professional fees and $13.91 for expenses. All told, these fees amount to $11,610.00, with expenses totaling $212.51, covering work performed from May 11, 2011 through July 10, 2011. The receiver calculated his fees based upon 19.1 hours of attorney services at $300.00 an hour, 33.0 hours of receiver services at $150.00 per hour, and 18.6 hours of paralegal services at $50.00 an hour. The expenses relate to printing, photocopying, and postage charges.

In its initial order appointing the receiver, the court imposed a cap on fees in the amount of five percent (5%) upon receipts and disbursements. The court noted in a previous order that the receiver was already approaching that amount based upon estimated receipts and disbursements, and directed the receiver to move for a ten percent (10%) cap if appropriate. The receiver has done so, and for good cause shown, that request is GRANTED. But even the heightened cap may not be sufficient based on the receiver's current estimates. Based on the receiver's second interim report, the court estimates that professional fees (including fees incurred by those employed by the receiver) will be limited to $27,904.50; however, the receiver estimates that total receivership fees will exceed $28,000.00, plus accounting fees between $12,000.00 and $15,000.00.[2]

---

[2] The receiver reports $192,000.00 on hand and an additional $80,000.00 anticipated from the sale of the Maryland property and the Aston Martin. The court assumes that the previously awarded $7,045.00 was not included in the "cash on hand" amount. Adding these three figures together, the court has arrived at estimated total receipts available for disbursement, before fees and expenses, to be $279,045.00. Additional funds may be recovered from the sale of the North Carolina properties, but the receiver does not appear optimistic.

4

The court is not inclined to increase the cap again at this time. The receiver's diligent administration of the estate is appreciated, but the focus of this court must be on maximizing the disbursements to the victims of defendants' fraud. To that end, and in order to further control costs, the court will reduce the amount at which receiver (but not attorney) services may be billed. The court now will compensate the receiver at the rate of $100 per hour. Although this is less than the hourly rate an attorney such as the receiver might obtain for legal services, it is nevertheless a generous hour fee for the administration of an estate. Inability of the receiver to contain fees and costs in the future may lead to further reduction in rates.

Using this new figure for both the second and third requests for fees, the court awards $9,960.00 in professional fees and $212.51 in expenses. The court has determined that these amounts are reasonable under the factors set forth by Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir. 1978). The court notes that, adding these amounts to what has previously been allowed by the court, the receiver's total compensation to date has been $17,005.00, with additional costs and expenses in the amount of $461.80. The receiver therefore has approximately $10,900.00 remaining on his "budget," absent additional revenue from the sale of the North Carolina properties.

## CONCLUSION

For the reasons set forth above, the receiver's second (DE # 54) and third (DE # 56) applications for fees are ALLOWED IN PART. The court increases the cap on professional fees to ten percent (10%) on receipts and disbursements. For services rendered between May 11, 2011, and July 10, 2011, the receiver is ALLOWED $9,960.00 in professional fees and $212.51 in expenses. The receiver further is DIRECTED to provide a third interim receivership report and plan within thirty (30) days of date of entry of this order.

SO ORDERED, this the 9th day of August, 2011.

                                          LOUISE W. FLANAGAN
                                          Chief United States District Judge