IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CV-85-FL

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | ORDER |
| v. | ) ) | |
| YELLOWSTONE PARTNERS, INC. and DENNIS TODD HAGEMANN, | ) ) ) | |
| Defendants. | ) | |

This matter comes before the court on the third interim report (DE # 61), fourth interim application for fees (DE # 60), and fifth interim application for fees (DE # 62) filed by L. Bruce McDaniel, the receiver of defendants' assets. The court finds the receiver's third interim report to be satisfactory and will allow his applications for fees.

## BACKGROUND

On March 9, 2010, plaintiff filed complaint with this court seeking to restrain defendants from violating the Commodity Exchange Act ("the Act"), 7 U.S.C. § 1 et seq., as amended. On March 10, 2010, the court ordered statutory preliminary injunctive relief to prohibit dissipation of assets. After defendants failed to appear, the court entered default judgment, permanently enjoining defendants from further violating the Act and awarding a substantial civil monetary penalty as well as ancillary equitable relief.

On March 31, 2011, upon motion of plaintiff, the court appointed Mr. McDaniel as temporary receiver of defendants' assets. Among other things, the court directed the receiver to

assume full control of defendants' business affairs, to take possession of the funds and other asserts in defendants' control, to collect money owed to defendants, and to engage the services of any professional or specialist deemed advisable or necessary to perform his duties.

The receiver filed his first interim report on May 13, 2011, in which he detailed steps taken to fulfill his obligations as receiver. By order entered June 16, 2011, as amended by later order entered June 20, 2011, the court allowed the receiver's first application for professional fees in the amount of $7,045.00, and costs in the amount of $249.29. The court noted that, in light of the limited assets of the receivership estate, the cap on fees of 5% of total receipts and disbursements would soon be met. As such, the receiver was directed to move to increase the cap if necessary.

The receiver filed his second interim report on July 18, 2011. By order entered August 10, 2011, the court allowed in part the receiver's second and third applications for fees. For services rendered between May 11, 2011, and July 10, 2011, the court allowed receiver $9,960.00 in professional fees and $212.51 in expenses. The court also increased the cap on professional fees to ten percent (10%) of receipts and disbursements.

## DISCUSSION

A.   Third Interim Receivership Report and Plan

The receiver's third interim report indicates that he has been diligent in carrying out the plan identified in his prior report. Specifically, the receiver closed on Maryland realty.[1] Net proceeds received therefrom amounted to $60,305.75.

Receivership real estate in Eastern North Carolina remains difficult to value. The receiver indicates that he has hired a local attorney to determine not only the exact tracts of realty involved,

---

[1] By order entered July 20, 2011, the court allowed the receiver's motion to sell this property.

2

but also who owns and what encumbers them. The receiver reports incomplete paperwork and multiple owners, and is pursuing a settlement to avoid further delays and costs. He warns that barring a settlement, litigation could be quite costly in terms of legal fees.

The receiver continues to pursue the sale of a 2005 Aston Martin in his possession, which is undergoing minor repairs in anticipation of a sale in the immediate future. The car's previous bailee was paid a settlement value for incomplete repair work and accrued storage charges. Present repair work is being done by another automotive broker and repair shop in Raleigh, North Carolina. The receiver hopes to sell the car soon after repair.

All told, the receivership currently has approximately $228,000.00 on hand, with an additional $20,000.00 to $30,000.00 anticipated from sale of the Aston Martin. (The value of the North Carolina real estate is impossible to estimate at this point.) The receiver has received no new documentation regarding anticipated claims on the receivership estate by defrauded investors. That figure stands at approximately $1,505,000.00. The receiver estimates total receivership fees will run between $28,000.00 and $35,000.00, with additional accounting fees ranging from $12,000.00 to $15,000.00.

The receiver's progress thus far is satisfactory, but once again the court is concerned that the receivership and accounting fees estimated by the receiver will outpace the cap on such fees imposed and recently increased by the court, and will significantly reduce the amount available to the victims of defendants' fraud. The receiver is directed to continue to consider how he may reduce further the receivership fees in this case. The receiver is also directed to continue to work toward selling the Aston Martin and obtaining a valuation and/or settlement regarding the real estate in Eastern North Carolina. As before, the receiver is directed to file a supplemental receivership report and plan

3

within thirty (30) days of date of entry of this order.

B.      Fourth and Fifth Interim Applications for Fees

In his fourth interim application, the receiver requests $2,770.00 in professional fees and $7.31 for expenses. In his fifth application, he requests $1,815.00 in professional fees and $7.90 for expenses. All told, these professional fees amount to $4,585.00, with expenses totaling $15.21, covering work performed from July 11, 2011, through September 10, 2011. The receiver calculated his fees based upon 6.2 hours of attorney services at $300.00 an hour, 25.1 hours of receiver services at $100.00 per hour, and 4.3 hours of paralegal services at $50.00 an hour. The expenses relate to photocopying and postage charges.

The court, in its initial order appointing the receiver, imposed a cap on fees in the amount of five percent (5%) upon receipts and disbursements. In order dated August 10, 2011, the court increased the cap to ten percent (10%) upon receipts and disbursements. But even the new cap may not be sufficient according to the receiver's current estimates. Based on the receiver's third interim report, the court estimates that professional fees (including fees incurred by those employed by the receiver) will be limited to $27,500.50; however, the receiver estimates that total receivership fees will exceed $28,000.00 and that accounting fees will add between $12,000.00 and $15,000.00.[2]

The court is not inclined to increase the cap again at this time. The receiver's diligent administration of the estate is appreciated, but the focus of this court must be on maximizing the disbursements to the victims of defendants' fraud.

---

[2] The receiver reports $228,000.00 on hand and anticipates an additional $30,000, at most, from sale of the Aston Martin. The court assumes that the previously awarded $17,005.00 was not included in the "cash on hand" amount. Adding these three figures together, the court has arrived at estimated total receipts available for disbursement, before fees and expenses, to be $275,005.00. Additional funds may be recovered from the sale of the North Carolina properties, but the receiver does not appear optimistic.

The court awards the requested $4,585.00 in professional fees and $15.21 in expenses. These amounts are reasonable under the factors set forth by Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir. 1978). The court notes that, adding these amounts to what has previously been allowed by the court, the receiver's total compensation to date has been $21,590.00, with additional costs and expenses in the amount of $477.01. The receiver therefore has approximately $5,910.50 remaining on his "budget," absent additional revenue from the sale of the North Carolina properties.

## CONCLUSION

For the reasons set forth above, the receiver's fourth (DE# 60) and fifth (DE# 62) applications for fees are ALLOWED. For services rendered between July 11, 2011, and September 10, 2011, the receiver is ALLOWED $4,585.00 in professional fees and $15.21 in expenses. The receiver further is DIRECTED to provide a fourth interim receivership report and plan within thirty (30) days of date of entry of this order.

SO ORDERED, this the 30th day of September, 2011.

_____
LOUISE W. FLANAGAN
Chief United States District Judge

5

Case 5:10-cv-00085-FL   Document 63   Filed 09/30/11   Page 5 of 5