IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CV-85-FL

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | ORDER |
| v. | ) ) | |
| YELLOWSTONE PARTNERS, INC. and DENNIS TODD HAGEMANN, | ) ) ) | |
| Defendants. | ) | |

This matter comes before the court on plaintiff's response and recommendation (DE 143) as to the proposed plan of distribution set forth in the receiver's motion for disbursement of funds (DE 131). The receiver responded in agreement with plaintiff's recommendation, with one proposed clerical modification, to which plaintiff states it has no objection. The receiver filed a certificate of service in accordance with the court's December 3, 2013, order, and no objections to plaintiff's recommendation have been received in the time period provided. In this posture, this matter is ripe for ruling.

BACKGROUND

The court has in prior orders set forth the background of this case, which the court incorporates and updates herein. Plaintiff commenced this action on March 9, 2010, to restrain defendants from violating the Commodity Exchange Act, 7 U.S.C. § 1 et seq., as amended. Plaintiff alleged that from at least September 2009 through March 9, 2010, defendants solicited and received over $1.3 million from individuals to be pooled and traded in foreign currency markets. However,

defendant Hagemann traded only a minimal portion of the funds. The remainder was misappropriated to pay personal and business expenses, and to operate a Ponzi scheme whereby he used funds received from some customers to pay other customers.

On March 10, 2010, the court awarded statutory preliminary injunctive relief to prohibit dissipation of assets where plaintiff claimed defendants engaged in fraudulent solicitation and misappropriation. On February 24, 2011, motion for entry of default judgment was made, which motion was followed on the docket by a motion for appointment of a receiver. By order entered March 1, 2011, the court awarded default judgment, including permanent injunction of further violations of the Commodity Exchange Act, substantial civil monetary penalty, and ancillary equitable relief.

On March 31, 2011, the court granted plaintiff's motion for appointment of receiver, which directed the receiver to file an initial report with the court "outlining the steps taken to identify customers, marshal assets, determine the amount invested by each customer, and the portion of assets available to pay back customers," as well as "the estimated time it will take to distribute available assets to customers and wind up the receivership." (DE 45 at 7). Subsequently, the receiver filed multiple detailed interim reports in accordance with the court's order. (DE 47, 55, 61, 68, 74, 78, 81, 85, 94)

In report and motion to establish claim procedures and approve claim form, filed July 11, 2013, the receiver stated that he had disposed of all assets in the receivership and was then "in a position to move on to the establishment of some system for the process of claim procedures with an established claim form." (DE 121). By order dated August 6, 2013, the court approved the receiver's proposed claim procedures and claim form. (DE 125).

2

In his final report and motion for disbursement of funds filed October 29, 2013, the receiver stated that he had "mailed the approved claim form to all possible claimants for whom or which the Receiver had any effective address," and a total of 23 claims, by 21 separate claimants, were submitted to the receiver. The receiver reported claims submitted of two types:

(1) "investor creditor claims pursuant to monies paid to the defendants in this case, constituting bailments and money had and received as a matter of law," and

(2) "equity investor" claims.

(DE 131 at 2). The receiver concluded that "equity investor" claims must be subordinated to "investor creditor" claims, also referred to as "ordinary creditor" claims, resulting in a proposed distribution of $254,173.40 in available funds to seven "investor creditor" claimants, amounting to 48.414% of the $525,000 net claims by those claimants, and no amount of distribution to "equity investor" claimants who have an aggregate net claim of $1,195,000 (as revised November 4, 2013). (DE 131 at 3; DE 132 at 2). In the alternative, the proposal noted that if equity investor claimants are determined by the court to be entitled to participation as creditors, the total amount of the net receivership estate available for distribution to both classes of claimants would be 17.539%.

In the receiver's notice of objections, filed November 25, 2013, the receiver attaches four objections by claimants falling in the "equity investor" category proposed by the receiver. As summarized by the receiver, "the overall essence of these objections is that those four objectors . . . take the position that all investors should be treated the same, whether they have been identified as equity investors because their subscriptions agreements indicate equity investments in the defendant corporation, or otherwise general creditors whose investments did not involve written evidence of any such equity investments." (DE 138 at 1-2). As stated by one objector, "[t]he major basis for differentiating these two groups is the issuance of shares, which were proven to be sham and non-

3

existent[,]" and "[a]s such, to formulate any disbursement based upon a fictitious categorization created by the defendant is an injustice." (Id. Att. 1, Kaplan Objection).

In light of the objections and legal authority supporting a *pro rata* distribution to all claimants, rather than to a portion of the claimants, the court directed plaintiff to file a response addressing the issues raised in the objections and providing further recommendation regarding a fair and equitable distribution in this case. On January 10, 2014, plaintiff recommended distribution to all claimants, using a net *pro rata* method to achieve this result. On January 16, 2014, the receiver filed a joinder agreeing to the recommendation, with one proposed clerical modification. Plaintiff states it has no objection to the proposed modification.

DISCUSSION

In the court's prior order, the court set forth applicable principles governing receiverships, which the court incorporates and updates herein as a guide to the court's consideration of plaintiff's recommendation as to plan of distribution in this matter. "[A] district court has within its equity power the authority to appoint receivers and to administer receiverships." Gilchrist v. Gen. Elec. Capital Corp., 262 F.3d 295, 302 (4th Cir. 2001) (citing Fed. R. Civ. P. 66). Section 6a of the Commodity Exchange Act, as amended, 7 U.S.C. § 13a-1, broadly provides the court with authority to fashion appropriate equitable remedies:

> In any action brought under this section, the Commission may seek, and the court may impose, on a proper showing, on any person found in the action to have committed any violation, equitable remedies including--
> (A) restitution to persons who have sustained losses proximately caused by such violation (in the amount of such losses); and
> (B) disgorgement of gains received in connection with such violation.

7 U.S.C. § 13a-1. Although the statute does not expressly set forth guidelines for appointment of receivers and review of distributions proposed by receivers, courts have recognized that the statute

4

"provides the court with authority to issue a broad variety of orders," including "the appointment of a receiver, an accounting, and disgorgement," and "ancillary relief." Commodity Futures Trading Comm'n v. Co Petro Mktg. Grp., Inc., 680 F.2d 573, 583 (9th Cir. 1982) (holding that the Commodity Exchange Act authorizes the appointment of a receiver as ancillary relief); see also Commodity Futures Trading Comm'n v. Walsh, 712 F.3d 735, 749 (2d Cir. 2013) (recognizing that a district court has equitable authority in assessing and approving a receiver's plan for compensation of victims of a fraudulent scheme in a case arising under the Commodity Exchange Act). Appointment of a receiver lies within the sound discretion of the district court "where necessary to protect the public interest and where it is obvious . . . that those who have inflicted serious detriment in the past must be ousted." SEC v. Bowler, 427 F.2d 190, 198 (4th Cir. 1970); see also Lias v. United States, 196 F.2d 90, 92 (4th Cir. 1952) (per curiam).

The receiver is an officer of the court and is appointed "not for the benefit of either party," but instead as "a representative and protector of the interests of creditors and shareholders alike," charged with preventing injury to the subject property and preserving its value. Lowder v. All Star Mills, Inc., 309 S.E.2d 193, 198 (N.C. 1983); see also Liberte Capital Grp., LLC v. Capwill, 462 F.3d 543, 551 (6th Cir. 2006); Goldmark Friendship, LLC v. Am. Express Tax & Bus. Servs., Inc., 304 F.3d 353, 357-58 (4th Cir. 2002) (citing Maryland law). Because the receiver is an officer of the court, the court exercises "extremely broad" equitable authority to oversee and modify receiverships. See SEC v. Hardy, 803 F.2d 1034, 1037 (9th Cir. 1986).

With respect to approval of a proposed plan of distribution, recent case law has addressed a fair and equitable method for distribution of funds to fraud victims of a "Ponzi scheme." In particular:

5

> A district court assessing a receiver's plan for compensation of victims of a fraudulent scheme has 'equitable authority ... to treat all the fraud victims alike (in proportion to their investments) and order a pro rata distribution.' *'[T]he use of a pro rata distribution has been deemed especially appropriate for fraud victims of a "Ponzi scheme*,"'. . . 'where . . . the funds of the defrauded victims were commingled and where victims were similarly situated with respect to their relationship to the defrauders."

Walsh, 712 F.3d at 749 (quoting SEC v. Credit Bancorp, Ltd., 290 F.3d 80, 88-89 (2d Cir.2002)) (internal citations omitted) (emphasis added). The court notes that the complaint in this matter describes the fraudulent scheme in this case as having characteristics of a "Ponzi scheme." See Compl. ¶¶ 4, 28.

Furthermore, the court notes "[i]t is well settled that in an action brought to enforce the requirements of remedial statutes such as the Commodity Exchange Act, a district court has broad discretion to fashion appropriate relief." Anderson v. Stephens, 875 F.2d 76, 79 (4th Cir. 1989) (internal quotations omitted); see also U.S. Commodity Futures Trading Comm'n v. Barki, LLC, 3:09 CV 106-MU, 2009 WL 3839389 *1 (W.D.N.C. Nov. 12, 2009) ("When approving a distribution plan, a district court sits in equity and has the authority to approve any plan provided it is fair and reasonable.") (internal quotations omitted).

In light of these principles, consistent with the reasoning of the court's prior order, as well as plaintiff's recommendation, now joined by the receiver, and the objections received to the originally proposed plan, the court finds that it is fair and reasonable to direct the receiver to (1) distribute the receivership estate among all of the claimants who filed approved claims with the receiver identified in the receiver's final report and motion for approval, as updated (DE 131, 132; see DE 144), and (2) use the net *pro rata* method as set forth in plaintiff's recommendation to achieve this result.

Distribution to all claimants on a *pro rata* basis is warranted due to the nature of the fraud

6

alleged and due to the fact that the amount of funds remaining in the receivership estate is less than the sum of claims. The court incorporates herein plaintiff's summary of the facts and circumstances of this case demonstrating the reasonableness of such an approach:

> The Defendants' scheme involved fraudulently soliciting some customers in a manner that lead them to be identified as creditor claimants while others were fraudulently solicited in a manner that lead them to be identified as equity investor claimants. In turn, this resulted in the Receiver moving the Court to allow payment to the creditor claimants but not the equity investor claimants. . . .
>
> The essence of [the objections received] is that: all of the customers were victims of the Defendants' fraudulent scam, the differentiation between equity investor and creditor claimant was based on fraudulent paperwork, there was effectively no differentiation between customers who provided money to the Defendants, and it is unjust to treat the defrauded customers differently. . . .
>
> [T]he customers were defrauded as part of one large on-going fraud that violated the Act multiple times, rather than multiple individual frauds. See [Compl. ¶45]. Although the Defendants' fraudulent representations may have varied to some degree, all the customers believed their funds would be traded in the forex markets and that they would receive large returns. In addition, the Defendants comingled the customers' funds in various financial accounts, used later customers' funds to pay earlier customers in furtherance of their Ponzi scheme, and used the customers' funds as their own. Id., p. 8-9. Moreover, all the customers were defrauded regardless of whether they were classified as creditor claimants or equity investor claimants. In reality, the Claimants were neither creditor claimants nor equity investor claimants; rather, they were all simply customers of one large fraud.

Recommendation at 5-6.

Use of a net *pro rata* method to apportion the share of funds for distribution is also warranted where some customers previously received a return of some of their initial investment amount. In this respect, every claimant will receive the same percentage of their net investment. (DE 131). Use of the net *pro rata* method also comports with the initial proposal of the receiver.

In sum, the court finds distribution to all claimants on a net *pro rata* method to be fair and equitable, in light of the circumstances of defendants' violations and the amount of remaining funds in the estate.

7

Adopting the net *pro rata* method of distribution to all claimants results in a distribution along the lines recommended by plaintiff in the schedule attached as Exhibit A to plaintiff's recommendation, which must be adjusted to take into consideration the addition noted by the receiver, to add the names of Adam Grossman and Michael D. Grossman, who had net claims against the estate of $25,000 and $100,000, respectively. In order to ensure an accurate record of distributions in this case in accordance with the method directed herein, the court will direct plaintiff to update Exhibit A of its recommendation to reflect the addition of the net claims of Adam Grossman and Michael D. Grossman, and to reflect the final amount of funds available for distribution. Plaintiff will be directed to confer with the receiver and file its updated exhibit within twenty-one (21) days of the date of this order, for the record in this case. The receiver need not await, however, filing of the updated exhibit before the distributions, now approved in accordance with the methods set forth herein, may be made.

In the interest of expediting calculation and payment of final distribution to claimants the court will take up the receiver's thirty-fourth motion for attorney's fees (DE 148), in its discretion, without waiting for response time to run as previously deemed necessary by the court in its March 31, 2011, order in this case, where plaintiff has now indicated its assent to the distribution set forth herein. (DE 45). For good cause shown, the motion will be granted. Finding the requested amount reasonable for the reasons stated in the motion, the requested fees and expenses are approved and allowed, and the court awards the receiver $676.73 in professional fees and expenses.

CONCLUSION

Based on the foregoing, the court DIRECTS the receiver to (1) distribute the receivership estate among all of the claimants who filed approved claims identified in the receiver's final report

8

and motion for approval, as updated (DE 131, 132; see DE 144), and (2) use the net *pro rata* method as set forth in plaintiff's recommendation to achieve this result. The court DIRECTS plaintiff to update Exhibit A of its recommendation to reflect the addition of the net claims of Adam Grossman and Michael D. Grossman, and to reflect the final amount of funds available for distribution. The court DIRECTS plaintiff to confer with the receiver and file its updated exhibit within twenty-one (21) days of the date of this order, for the record in this case.

In addition, for the reasons stated herein, the receiver's thirty-fourth motion for attorney's fees (DE 148) is GRANTED.

SO ORDERED, this the 18th day of February, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge